WESTERN CASUALTY & SURETY COMPANY, a corporation, Plaintiff-Respondent,

v.

Gary Lynn ALLEY, Defendant-Appellant,

and

Kenneth Samuel Conway, Defendant.

No. 14143.

Missouri Court of Appeals, Southern District, Division Two.

May 28, 1986.

Donald Rhodes, Bloomfield, for defendant-appellant.

Albert C. Lowes, Lowes & Drusch, Cape Girardeau, for plaintiff-respondent.

**196** ■ ▬▬▬▬▬▬▬▬

CROW, Judge.

Gary Lynn Alley ("Gary") appeals from a declaratory judgment holding that Kenneth Samuel Conway ("K.S. Conway") has no insurance coverage under policy number 64 72 20, allegedly issued by The Western Casualty and Surety Company ("Western Casualty").

The incident that triggered the litigation occurred in the early morning hours of April 23, 1983, when Gary was working as a cashier at a "service station and novelty shop" near Matthews, Missouri. At that time, one Billy Ray Kimball, Jr. ("Kimball") entered the establishment, brandished a pistol, and demanded the money in the cash register. Gary took the bills from the register and placed them in a bag. Kimball grabbed the bag and, after asking whether Gary knew him, ordered Gary to accompany him outside.

There, Kimball directed Gary to enter a "two-tone blue El Camino." Gary complied, observing that K.S. Conway was seated behind the steering wheel. Kimball, holding the pistol on Gary, ordered K.S. Conway to drive off.

After a ride of 15 to 20 minutes, Kimball instructed K.S. Conway to turn down a "dirt road." About a half mile down the road, K.S. Conway, on Kimball's order, stopped the vehicle in a field. K.S. Conway then removed Gary's eyeglasses, broke them, and threw them outside the vehicle.

Kimball exited the vehicle, motioning for Gary to follow. Kimball then demanded Gary's billfold, which Kimball pitched into the vehicle. Kimball also took Gary's watch and the contents of his pockets. Kimball then told Gary to step away from the vehicle. K.S. Conway, still seated behind the steering wheel, told Gary to run. That order, however, was countermanded by Kimball, who warned Gary to stop.

Kimball then got in the vehicle, where he remained a minute or two, evidently examining the contents of Gary's billfold. Kimball then announced he knew Gary's name and address, and simultaneously got back outside.

Gary pleaded that he did not want to die, but Kimball replied, "Well, I've been thinking about that, [y]ou're not worth it." Kimball then fired the pistol, the bullet striking Gary in the neck two or three inches below the left ear. The impact knocked Gary down, and the culprits drove away.

Gary arose and made his way to a farmhouse a half mile distant. An occupant there phoned for help, and Gary was taken to a hospital.

Later that day, Kimball and K.S. Conway were arrested, the latter's arrest occurring at the home of his parents, Kenneth C. Conway and Katie M. Conway.

On June 15, 1983, Western Casualty filed a petition for declaratory judgment in the Circuit Court of New Madrid County, alleging, among other things, that on or about January 7, 1983, it had issued a policy of liability insurance, number 64 72 20, to Kenneth C. Conway and Katie M. Conway, that Gary had allegedly been shot and injured on April 23, 1983, as a result of an act of K.S. Conway, that Gary and K.S. Conway maintained that K.S. Conway, on April 23, 1983, was a resident of the household of Kenneth C. Conway and Katie M. Conway, and therefore was an "insured" under said policy, and that Gary and K.S. Conway had made claims against Western Casualty under said policy.

The petition pleaded that K.S. Conway was not a resident of the household of Kenneth C. Conway and Katie M. Conway, and thus was not an insured under said policy. Furthermore, pleaded the petition, K.S. Conway was not afforded coverage because Gary's injury resulted from ". . . an act which is expected or intended by the insured to cause bodily injury . . .", liability for which is excluded from coverage under policy number 64 72 20, and also excluded by public policy.

On August 23, 1983, the trial court, noting that K.S. Conway had been served with summons and had failed to appear within the time required, entered judgment by default in favor of Western Casualty and

against K.S. Conway. The judgment declared that K.S. Conway was not an insured under the subject insurance policy, and that in any event K.S. Conway had no coverage under said policy because the incident in which Gary was allegedly shot resulted from an act which was expected or intended by K.S. Conway to cause bodily injury to Gary. The judgment further declared that K.S. Conway had no coverage under said insurance policy by reason of the public policy of Missouri.

On October 12, 1983, in the Circuit Court of New Madrid County, K.S. Conway, appearing with counsel, entered pleas of guilty to the class A felony of robbery in the first degree and the class B felony of kidnapping, both charges arising from the incident of April 23, 1983. He was sentenced to imprisonment for 10 years and 5 years, respectively, the sentences to run concurrently.

On May 22, 1984, the issues between Western Casualty and Gary in the declaratory judgment suit went to trial. Thereafter, on January 17, 1985, the trial court entered judgment in favor of Western Casualty, ruling that K.S. Conway was not an insured under policy number 64 72 20, and that, in any event, K.S. Conway was not afforded coverage under said policy because the incident in which Gary was allegedly shot resulted from an act which was expected or intended by K.S. Conway to cause bodily injury to Gary. Furthermore, declared the court, the alleged act of K.S. Conway was excluded from insurance coverage by the public policy of Missouri.

Gary appealed, and the cause was ultimately argued and submitted to us on April 9, 1986.

Thereafter, in studying the record on appeal, we noted that, contrary to the allegations of Western Casualty's petition, the face sheet of policy number 64 72 20 plainly showed that said policy was issued by *The Western Indemnity Company, Inc.*, not by Western Casualty. Consequently, on May 6, 1986, we issued an order directing Gary to show cause why the judgment in favor of Western Casualty should not be summarily affirmed on the fundamental ground that Western Casualty could not be liable under policy 64 72 20, as Western Casualty had not issued it.

In response to our order, we received a stipulation signed by counsel for Western Casualty and counsel for Gary.[1] The stipulation stated that the parties desired this Court to make a decision on the issues briefed,[2] that Western Casualty is the "sole shareholder" of The Western Indemnity Company, Inc. ("Western Indemnity"), that Western Casualty and Western Indemnity are under the management and control of the same personnel so that notice to one corporation would serve as notice to the other, that the handling of the claim would have been the same whether the named plaintiff was Western Casualty or Western Indemnity, that Western Indemnity would have no objection if this Court "simply substituted" Western Indemnity for Western Casualty in this appeal, and that the parties urged this Court to do so.

In reply, we indicated that if any relief could be given at this point, it should be in the form of adding Western Indemnity as a party to the appeal, rather than substituting Western Indemnity for Western Casualty. We invited counsel for the parties to supply authority demonstrating that we were empowered to proceed in such fashion. Counsel promptly filed a joint "Memorandum of Law," which we have carefully considered. They also filed a second stipulation, agreeing that Western Indemnity be made "an additional plaintiff-respondent."

---

1. The attorneys now representing Western Casualty and Gary, respectively, are not the attorneys who represented those parties at trial.

2. Gary's brief, summarized, maintains that the evidence established that (a) K.S. Conway, on April 23, 1983, was residing with his parents—the policyholders—and was consequently an insured under policy 64 72 20, and (b) K.S. Conway negligently failed to try to prevent Kimball from shooting Gary, and negligently abandoned Gary after the shooting instead of summoning aid for him.

Having further deliberated, with sensitivity to the joint request of the parties, we have concluded, on the basis of *Aetna Life Insurance Co. v. Litteer*, 621 S.W.2d 376 (Mo.App.1981), that the proper disposition under the existing circumstances is the action hereafter detailed.

In *Aetna,* an indispensable party was not joined in the action in the trial court. On appeal, after the cause had been argued and submitted, the parties attempted to correct the omission by consenting that the indispensable party could intervene in the appeal. Said party was willing to do so, waiving service of process and consenting to be bound by the judgment of the trial court and by the holding of the appellate court. The opinion in *Aetna* stated: "Absent a suggestion of death or the like, this court has no authority under the statutes, the rules or the case law to permit addition or substitution of parties." 621 S.W.2d at 379[1]. Accordingly, the appellate court in *Aetna* denied leave to the indispensable party to enter appearance in the appeal, reversed the judgment, and remanded the cause to the trial court to give the indispensable party full opportunity to appear, or to dismiss the case if such appearance was not forthcoming.

In our view, that procedure is appropriate here. The parties, in the proceeding below, sought a determination whether policy 64 72 20 provided liability insurance coverage to K.S. Conway for the shooting of Gary on April 23, 1983. Inasmuch as policy 64 72 20 was issued by Western Indemnity, that company was an indispensable party for the adjudication of that issue. Rule 52.04, Missouri Rules of Civil Procedure (14th ed. 1983); *Aetna,* 621 S.W.2d at 379–80. Accordingly, we hold that the judgment must be reversed and the cause must be remanded to the trial court with directions to set an appropriate deadline for Western Indemnity to enter its appearance as a party in this cause. If Western Indemnity does so, the trial court shall proceed thereafter in such manner as shall appear appropriate, given the contentions of Western Indemnity (whatever they may turn out to be) and those of the existing parties in response thereto. If Western Indemnity fails to enter its appearance within the deadline, or is not otherwise made a party, the trial court shall order the cause dismissed. Rule 52.04(b).

The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed half against Gary and half against Western Casualty.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.